UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| PHARMACY CORPORATION OF AMERICA d/b/a PHARMERICA as successor in interest to INTEGRITY PHARMACY SERVICES, LLC, | ) ) ) ) ) ) | |
| PLAINTIFF | ) ) | |
| v. | ) ) | Case No. 6:20-cv-01311-RBD-DCI |
| UNIVERSITY CENTER WEST OPERATING, LLC d/b/a UNIVERSITY WEST REHABILITATION CENTER; and UNIVERSITY CENTER EAST OPERATING, LLC d/b/a UNIVERSITY EAST REHABILITATION CENTER, | ) ) ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff, Pharmacy Corporation of America d/b/a PharMerica ("PharMerica"), as successor in interest to Integrity Pharmacy Services, LLC, states as follows for its First Amended Complaint against Defendants, University Center West Operating, LLC d/b/a University West Rehabilitation Center ("West"), and University Center East Operating, LLC d/b/a University East Rehabilitation Center ("East") (collectively West and East are the "Defendants" and individually each a "Defendant"):

## NATURE OF THE ACTION

1. This action arises out of Defendants' failure to pay for pharmacy goods and services provided by PharMerica to Defendants for residents of skilled nursing facilities which, at all times relevant, were owned, operated, and/or managed by Defendants.

## THE PARTIES

2. PharMerica is a California corporation with a principal place of business in Louisville, Kentucky. Thus, for the purpose of federal diversity jurisdiction, PharMerica is a citizen of California and Kentucky. PharMerica provides pharmacy goods and services to skilled nursing facilities "under arrangements," as defined by federal law.

3. West is a Florida limited liability company with a principal place of business in Deland, Florida. Its sole member is Nana Peleg, a resident of Delray Beach, Florida. For diversity purposes, West is a citizen of Florida. West may be served through its registered agent, Nana Peleg, at 16849 Pierre Circle, Delray Beach, Florida 33446. West owns and operates a skilled nursing facility located at 545 West Euclid Avenue, Deland, Florida 32720 (the "West Facility").

4. East is a Florida limited liability company with a principal place of business in Deland, Florida. Its sole member is Nana Peleg, a resident of Delray Beach, Florida. For diversity purposes, East is a citizen of Florida. East may be served through its registered agent, Nana Peleg, at 16849 Pierre Circle, Delray Beach, Florida 33446. East owns and operates a skilled nursing facility located at 991 E New York Ave, Deland, Florida 32724 (the "East Facility") (collectively, the West Facility and East Facility are the "Facilities" and individually each a "Facility").

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. The amount in controversy regarding each Defendant exceeds $75,000.

6. Specifically, exclusive of interest and costs, West has a past due principal balance of $67,635.34 and East has a past due principal balance of $87,623.73 for pharmacy goods and services it received from PharMerica for which they have not paid. Defendants are also liable for lost profits for the remainder of the contractual term as a result of Defendants' improper termination of the parties' agreements in excess of $75,000 each. Finally, pursuant to FSA §768.73, PharMerica is entitled to punitive damages for Defendants' fraudulent misrepresentations and inducement to PharMerica.

7. The Court has personal jurisdiction over Defendants because Defendants are business entities operating, present, and/or doing business within this jurisdiction, and Defendants' conduct occurred within this jurisdiction.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendants operate businesses and reside in this judicial district, and the transactions out of which this cause of action arose occurred in this judicial district.

## STATEMENT OF FACTS

9. PharMerica and the previous operators of the Facilities entered into December 1, 2007 Pharmacy Services Agreements ("PSA") and Pharmacy Consultant Agreements ("CSA"), as both were amended from time to time on January 1, 2010 and January 1, 2015, (collectively

the "Agreements"), pursuant to which PharMerica agreed to provide pharmacy goods and services to the residents of the Facilities.[1]

10. Under Section 4.1 of the PSA, as amended, and Section 5.1 of the CSA, as amended, the Agreements continued through December 31, 2019 and thereafter renewed automatically for successive periods of one (1) year unless notice of non-renewal was provided not less than sixty (60) day prior to the end of the term.

11. As of May 4, 2018, Defendants became the licensed operators of the Facilities and, at all relevant times, held the Medicare provider numbers for the Facilities.

12. When Defendants became the licensed operators of the Facilities, they continued to order pharmacy goods and service from PharMerica.

13. At the request of Defendants, PharMerica continued to provide pharmacy goods and services to Defendants and the residents of the Facilities pursuant to the terms of the Agreements, and Defendants agreed to pay PharMerica pursuant to the terms of the Agreements, while new pharmacy services agreements were negotiated by the Parties. Until a new agreement was reached, the Parties agreed that the terms of the Agreements, including pricing terms, would apply.

14. Defendants accepted and retained pharmacy goods and services from PharMerica for their residents' use.

15. PharMerica submitted monthly invoices to Defendants for the goods and services PharMerica provided Defendants.

---

[1] The Agreements contain confidential information, including pricing information, and have not been attached. Copies can be provided to the Court and to Defendants upon request and subject to appropriate confidentiality protections.

16. Pursuant to Section 3.2 of the PSA, as amended, and Section 4 of the CSA, as amended, and invoices submitted to Defendants, Defendants were to remit payment to PharMerica within ninety (90) days.

17. In addition, Section 3.2 of the Agreements, as amended, and Section 4 of the CSA, as amended, provided that Defendants had ninety (90) days from the billing date of the invoice to raise a dispute. Defendants did not raise any disputes in a timely manner as required under the Agreements.

18. Despite repeated demands for the sums due and owing under the Agreements, Defendants failed and refused to pay for the goods and services provided by PharMerica.

19. Under Section 6.2 of the Agreements, interest accrues on all past due amounts at a monthly rate of 1.5% or the highest rate permitted by applicable law.

20. PharMerica conferred with Defendants numerous times regarding the outstanding invoices for the goods and services provided and amounts past due and made repeated demands for payment.

21. On or about January 30, 2019, PharMerica sent correspondence to Defendants regarding their failure to pay the invoices as they became due. Because the Defendants had not paid the invoiced amounts owed, PharMerica stated that it would only provide products to the Facilities on a prepayment basis until all invoices were current. PharMerica sent a follow-up to this letter on February 13, 2019.

22. At this time, Defendants represented that they would pay all outstanding invoices pursuant to the Agreements and would enter into the new pharmacy services agreements the Parties had been negotiating for months.

23. Defendants had no intention of either paying all outstanding invoices or negotiating new pharmacy services agreements with PharMerica.

24. PharMerica agreed to continue to provide pharmacy goods and services based on misrepresentations of Defendants.

25. Defendants, after obtaining PharMerica's continued goods and services, began a pattern of promising PharMerica payments by credit card and providing such payment information, despite knowing that there was insufficient credit available for the payment and the payments would be declined.

26. Defendants made credit card payments for some, but not all, of the pharmacy goods and services provided by PharMerica.

27. Specifically, on the following dates Defendants provided credit card payments to PharMerica for pharmacy goods and services rendered to Defendants that were declined for (1) all or part of the payment amount, and (2) for one or both of the Facilities' payments : September 25, 2019; October 9, 2019; October 16, 2019; November 20, 2019; November 27, 2019; December 6, 2019; December 18, 2019; January 7, 2020; January 15, 2020; January 22, 2020; and January 29, 2020.

28. In December 2019, as the parties were finalizing the terms of the new pharmacy services agreements, Defendants sent termination notices to PharMerica as to the Agreements. PharMerica attempted to contact Defendants numerous times to discuss outstanding accounts receivable and Defendants' improper termination of the Agreements. Nonetheless, Defendants terminated services on February 1, 2020.

29. The initial term of the Agreements was through December 31, 2019. Thereafter, the Agreements automatically renewed for successive one (1) year periods, until proper notice was given.

30. Pursuant to the Agreements, Defendants were required to provide notice of non-renewal no less than sixty days prior to the end of the term.

31. Defendants failed to provide notice of nonrenewal as required under the Agreement in 2019. Thus, the Agreement renew for a successive one (1) year period, until December 31, 2020.

32. Therefore, Defendants February 1, 2020 termination was improper because it was in the middle of the then current term not set to expire until December 31, 2020.

33. Ultimately, despite PharMerica's good faith provision of goods and services and continued attempts to negotiate new pharmacy services agreements, Defendants terminated PharMerica's services and refused to pay for PharMerica's goods and services under the Agreements despite having no justifiable excuse for such failure to pay.

34. Defendants used their repeated promises to enter into the new pharmacy services agreements, payment of the invoices, and credit card pre-payments, that subsequently were short payed or declined, to intentionally delay PharMerica's collection efforts and termination of provision of pharmacy services, such that PharMerica continued providing goods and services without compensation as promised by Defendants and as required by applicable Medicare law.

35. West has a past due principal balance of $67,635.34, which is accruing interest at the applicable rate permitted under the Agreements and/or under Florida law.[2] East has a past

---

[2] West's open invoice activity summary is attached hereto as **Exhibit A**.

due principal balance of $87,623.73, which is accruing interest at the applicable rate permitted under the Agreements and/or under Florida law.[3]

36. Upon information and belief, Defendants have been reimbursed by Medicare for all or a significant portion of the goods and services provided by PharMerica, and have directly or indirectly benefitted from such reimbursement.

37. Upon information and belief, Defendants have reported PharMerica's invoice charges as valid expenses to the Internal Revenue Service for the purpose of reducing the amount of adjusted gross income on which Defendants and/or their members must pay taxes. As a result, Defendants and/or their members have paid lower taxes than they otherwise would have.

38. Without legal justification or excuse, Defendants continue to withhold payments from PharMerica for the goods and services provided by PharMerica to Defendants and residents of their respective Facilities.

39. As a direct and proximate result of Defendants' failure to pay, PharMerica has suffered damages, including but not limited to amounts due and owing, as set forth in the invoices, and interest.

40. Further, Section 6.17 of the Agreements provides that in the event an action is brought to enforce the Agreements, the prevailing party shall be entitled to reasonable attorneys' fees and cost from the non-prevailing party.

41. As a result of Defendants' failure to pay, PharMerica has incurred attorneys' fees and other cost in preparing and filing this action, all of which are Defendants' responsibility.

**COUNT I – BREACH OF CONTRACTS**
**(FAILURE TO PAY)**

---

[3] East's open invoice activity summary is attached hereto as **Exhibit B**.

42. PharMerica re-alleges and adopts by reference herein, Paragraphs 1-41 above, and further alleges:

43. Valid and enforceable contracts existed between PharMerica and Defendants.

44. PharMerica performed all conditions, covenants, and promises on its part to be performed under the Agreements, including providing Defendants with pharmacy goods and services and submitting monthly invoices.

45. Pursuant to the Agreements, as amended, and PharMerica's performance thereunder, Defendants are obligated to pay for the pharmacy goods and services provided by PharMerica.

46. Without legal justification or excuse, Defendants materially breached the Agreements with PharMerica by failing to pay invoices as they became due.

47. As a direct and proximate result of Defendants' breach of the Agreements, PharMerica has suffered damages because it has not been paid for the pharmacy goods and services it provided.

48. Interest accrues on the unpaid invoice balances under the Agreements and law.

49. As a result of Defendants' breach of contracts, PharMerica is entitled to its reasonable attorneys' fees and cost as provided in Section 6.17 of the Agreements.

### COUNT II – BREACH OF CONTRACTS
### (WRONGFUL TERMINATION)

50. PharMerica re-alleges and adopts by reference herein, Paragraphs 1-41 above, and further alleges:

51. Valid and enforceable contracts existed between PharMerica and Defendants.

52. PharMerica performed all conditions, covenants, and promises on its part to be performed under the Agreements, including providing Defendants with pharmacy goods and services and submitting monthly invoices.

53. Pursuant to the Agreements, as amended, Defendants were obligated to provide sixty (60) days' notice prior to the end of a term or the Agreements would automatically renew for successive one-year periods.

54. The initial term of the Agreements was through December 31, 2019.

55. Defendants failed to provide notice of nonrenewal sixty (60) days prior to the end of term as required under the Agreement.

56. Thus, the Agreement renewed for a successive one (1) year period, until December 31, 2020.

57. Without legal justification or excuse, Defendants materially breached the Agreements by terminating the Agreements in the middle of a term, ten months prior to the expiration of the then current term without providing PharMerica proper notice of their intent to terminate the Agreements.

58. PharMerica's damages, which include lost profits, are the natural and direct result of Defendants' breach of the Agreements.

### COUNT III– BREACH OF IMPLIED-IN-FACT CONTRACTS

59. In the alternative to Counts I and II, PharMerica re-alleges and adopts by reference herein, Paragraphs 1-9, 11, 12-15, 18, 20-22, and 33-39 above, and further alleges:

60. Implied-in-fact contracts existed and were intended to exist between PharMerica and each of the Defendants based on the parties' conduct.

61. After Defendants took ownership of the Facilities, Defendants continued to order pharmacy goods and services from PharMerica for residents of their respective Facilities. Defendants' orders of pharmacy goods and services from PharMerica was an offer to pay PharMerica, at the rates set forth in the Agreements and invoices.

62. PharMerica accepted Defendants' offer by providing pharmacy goods and services to Defendants for the residents of the Facilities. Defendants accepted those goods and services and clearly understood that they were obligated to pay for PharMerica's goods and services.

63. PharMerica provided Defendants with invoices, and Defendants were to remit payment within ninety (90) days.

64. In this regard, PharMerica and Defendants reached agreements as to PharMerica providing its pharmacy goods and services in exchange for Defendants' payments, and implied-in-fact contracts were formed.

65. Defendants breached the implied-in-fact contracts by failing to pay for all of the goods and services PharMerica provided.

66. PharMerica performed all conditions, covenants, and promises on its part to be performed under the implied-in-fact contracts, including providing Defendants with pharmacy goods and services.

67. As a direct and proximate result of Defendants' failure to pay PharMerica the proper amounts owing under the implied-in-fact contracts, PharMerica has suffered damages.

68. PharMerica is further entitled to interest on amounts withheld by Defendants.

### COUNT IV—UNJUST ENRICHMENT

69. In the alternative to Counts I and II, PharMerica re-alleges and adopts by reference herein, Paragraphs 1-8, 11, 12, 14, 15, 20-22, 34, and 36-39 above, and further alleges:

70. PharMerica conferred a benefit upon Defendants by providing valuable goods and services to Defendants at their request and based upon their inducement.

71. Defendants appreciated the benefit, and knowingly and voluntarily accepted and retained the benefit of PharMerica's goods and services.

72. PharMerica's goods and services were rendered under circumstances pursuant to which Defendants reasonably should have expected PharMerica would expect to be compensated.

73. Defendants have knowingly and willingly received, or will receive, reimbursement by Medicare, directly or indirectly, for goods and services provided by PharMerica, and have wrongfully and intentionally withheld or will withhold such amounts from PharMerica.

74. PharMerica has not been paid for all the services it provided Defendants.

75. Consequently, Defendants have been unjustly enriched through the receipt of such goods and services and at the expense of PharMerica.

76. Furthermore, Defendants have a legal and fiduciary duty to immediately remit proceeds received in reimbursements from Medicare to PharMerica.

77. Instead of remitting proceeds received in reimbursements from Medicare to PharMerica, Defendants retained those funds.

78. It is inequitable for Defendants to retain the benefit of PharMerica's goods and services without paying reasonable compensation for the same, which Facility Defendants have failed to do.

79. For these reasons, a constructive trust should be imposed on any and all proceeds which have been, or hereafter are, received by Defendants as reimbursement by Medicare for pharmacy related goods and services provided by PharMerica, plus interest.

80. PharMerica is further entitled to interest on amounts withheld by Defendants.

### COUNT V– PROMISSORY ESTOPPEL

81. In the alternative to Counts I-IV, PharMerica re-alleges and adopts by reference herein, Paragraphs 1-9, 11, 12, 14, 15, 20-22, 23-27, 34, 35, 38 and 39 above, and further alleges:

82. At Defendants' request, PharMerica provided pharmacy related goods and services to residents of the Facilities and timely submitted invoices for payment for the same.

83. PharMerica repeatedly demanded payment for the goods and services provided to Defendants, but despite Defendants' representations and promises that they would pay the goods and services provided, Defendants have failed to do so.

84. PharMerica repeatedly conferred with Defendants regarding the outstanding invoices and unpaid goods and services.

85. Defendants represented to PharMerica that the outstanding invoices would be paid and requested that PharMerica continue to provide goods and services.

86. In making the material representations set forth herein, Defendants knew that PharMerica would reasonably be induced to rely on such representation, in that it would continue to provide Defendants with pharmacy-related goods and services.

87. PharMerica, in reasonable reliance on Defendants' promises, continued to provide services to Defendants. Indeed, Defendants did pay for some, but not all, of the goods and services PharMerica provided. As a result, injustice can be avoided only by enforcement of Defendants promises to PharMerica.

88. As a direct and proximate result of Defendants' false promises and PharMerica's reliance thereon, PharMerica has suffered damages, and PharMerica is entitled to recover damages in an amount to be proven at trial, insofar as it provided pharmacy-related goods and services to Defendants for which it has not been compensated.

89. PharMerica is further entitled to interest on amounts withheld by the Defendants.

### COUNT VI—FRAUDULENT MISREPRESENTATION

90. In addition to Counts I-V, PharMerica re-alleges and adopts by reference herein, Paragraphs 1-8, 11-18, 20-39 above, and further alleges:

91. On January 30, 2019, PharMerica sent correspondence to Defendants regarding their failure to pay the invoices as they became due. Because the Defendants had not paid the invoiced amounts owed, PharMerica stated that it would only provide goods to the Facilities on a prepayment basis until all invoices were current. PharMerica sent a follow-up to this letter on February 13, 2019.

92. In response, Defendants represented that it would pay for PharMerica goods on delivery, that the outstanding invoices would be paid, and requested that PharMerica continue to provide its goods and services.

93. Based upon Defendants' representations, PharMerica continued to provide pharmacy goods and services to Defendants for the residents of their Facilities.

94. On the following dates, Defendants made the material representations that the goods would be paid for and provided credit card payments to PharMerica for pharmacy goods and services delivered to Defendants: September 25, 2019; October 9, 2019; October 16, 2019; November 20, 2019; November 27, 2019; December 6, 2019; December 18, 2019; January 7, 2020; January 15, 2020; January 22, 2020; and January 29, 2020. These material representations were false and the credit card payments were declined.

95. Based on Defendants' current positions, Defendants' representations at the time of these payments were false, and, on information and belief, Defendants knew that they were false when they made them. PharMerica is informed and believes, and on that basis alleges, that Defendants at all time intended to withhold payments from PharMerica and to manufacture excuses designed to reduce, delay, and/or deny payments to PharMerica.

96. PharMerica is informed and believes, and on that basis alleges, that Defendants provided PharMerica with credit card payment information to induce PharMerica to provide its pharmacy goods and services to Defendants for the residents of its Facilities knowing that the payments would be declined with the intent that PharMerica would rely upon the misrepresentations to its detriment.

97. In reliance on Defendants' misrepresentations, PharMerica provided Defendants with pharmacy goods and services, and Defendants accepted.

98. As a direct and proximate result of Defendants' fraudulent representations, PharMerica has suffered damages resulting from each Defendant, insofar as, among other things, it provided pharmacy goods and services for which it has not been paid.

99. Defendants have acted with a conscious disregard of the rights of PharMerica by making the foregoing material misrepresentations. PharMerica is therefore entitled to recover punitive damages from Defendants in an amount that is fair and reasonable.

100. PharMerica is further entitled to interest on amounts withheld by the Defendants.

### **PRAYER FOR RELIEF**

WHEREFORE, PharMerica requests judgment against Defendants as follows:

  A.    An award of damages in an amount to be proven at trial;

B. The imposition of a constructive trust on sums received by Defendants as Medicare reimbursement for pharmacy goods and services provided by PharMerica and not paid for by Defendants;

C. Pre-judgment and post-judgment interest;

D. Punitive damages; and

E. All other relief to which PharMerica may be entitled.

Respectfully submitted,

Mahlon H. Barlow, Trial Counsel
FL Bar No. 871117
Sivyer Barlow & Watson, P.A.
401 E. Jackson St.
Suite 2225
Tampa, Florida 33602
Telephone: (813) 221-4242
Facsimile: (813) 227-8598
mbarlow@sbwlegal.com

-and-

Jennifer Metzger Stinnett (to seek admission *pro hac vice*)
FULTZ MADDOX DICKENS PLC
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202
Telephone: (502) 588-2000
Facsimile: (502) 588-2020
jstinnett@fmdlegal.com

*Counsel for Plaintiff*

16